# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3253 | **DATE** | 8/9/2004 |
| **CASE TITLE** | Shirley Collins vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#19] is **denied;** Commissioner's Cross-Motion for Summary Judgment [#22] is **granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | **2** number of notices | | |
| ✓ | Notices mailed by judge's staff. | AUG 1 0 2004 date docketed | **26** |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/9/2004 date mailed notice | |
| | FT/ _dury_ courtroom deputy's initials | U.S. DISTRICT COURT CLERK | FT mailing deputy initials |
| | | Date/time received in central Clerk's Office FILED 2004 AUG -9 PM 2:56 | |

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**AUG 1 0 2004**

Shirley J. COLLINS,          )
                             )
        Plaintiff,           )
                             )
        v.                   ) No. 03 C 3253
                             )
                             ) Magistrate Judge Arlander Keys
Jo Anne B. BARNHART,         )
Commissioner of             )
Social Security,             )
                             )
        Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shirley Collins, moves this Court for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, to reverse the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), which denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In the alternative, Plaintiff asks the Court to reverse the Commissioner's denial of her claim for benefits, or remand the case to the Commissioner for further proceedings. The Commissioner has filed a Cross-Motion for Summary Judgment, which requests this Court to affirm its final decision. For the reasons set forth below, Plaintiff's Motion is denied and the Commissioner's Cross-motion is granted.



## PROCEDURAL HISTORY

On February 4, 2000, Plaintiff applied for DIB and SSI claiming that, as of September 30, 1999, she was unable to work because of depression and a lump in her breast. (R. at 119-121, 270-272.) The Social Security Administration ("SSA") denied her claim initially on April 3, 2000, and upon reconsideration on August 11, 2000. (R. at 94-97, 99-101.) Plaintiff requested a hearing and her case was assigned to Administrative Law Judge ("ALJ") Michael R. McGuire, who held the hearing on July 9, 2001. (R. at 28.) The ALJ issued his decision on July 23, 2001, finding that Plaintiff was not disabled and denying her claim for benefits. (R. at 26-27.)

The ALJ's decision became the final agency decision when the Appeals Council denied review on April 4, 2003. *See* 20 C.F.R. § 416.1481. As a result, the ALJ's decision stands as the final judgment of the Commissioner, and is now the subject of the motions before the Court.

## STATEMENT OF FACTS

### A. Evidence Presented At Plaintiff's Hearing

#### 1. Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff, who was represented by counsel, testified first. In response to questions from the ALJ, Plaintiff testified that she is 5'3 ½"

tall and weighs approximately 217 pounds, and that she is single and lives in an apartment with her youngest son. (R. at 39-40.) Plaintiff testified that her oldest son is serving a sentence in prison. (R. at 50.) Plaintiff testified that she completed the tenth grade, but had failed to obtain a General Equivalency Diploma ("GED"), despite three separate attempts. (R. at 76, 78.) Plaintiff testified that she still hopes to obtain a GED. (R. at 83.)

With respect to her past work experience, Plaintiff testified that, for approximately seven months in 1986, she was an inspector for a company that made caps and gowns. (R. at 42.) After leaving her job as a cap and gown inspector in 1987, Plaintiff went to work as a meter operator. (Id.) She testified that the job involved putting prices on mail and operating a postage meter. (R. at 42-43.) While working as a meter operator, Plaintiff testified that she also tried being a homemaker for elderly people for one month in 1998. (R. at 43.) Plaintiff testified that corporate down-sizing forced her to leave her meter operator job. (R. at 46.) Plaintiff testified that, prior to the down-sizing, her emotional problems had started to interfere with her work, and that she had contemplated leaving the company. (Id.) She explained that her emotional problems began when her oldest son started getting into trouble

with the law and her father died. (R. at 65.) Plaintiff testified that it was at this point that she started putting the wrong prices on mail. (R. at 66.) When questioned further on the circumstances surrounding the down-sizing, Plaintiff later testified that a few days before she left the company, she was involved in an altercation with a co-worker, threatening her co-worker with physical violence. (R. at 67.) Plaintiff testified that the day after this dispute, her supervisor called her into his office and told her that she had to leave the company. (R. at 67-68.)

With respect to her impairments, Plaintiff testified that she is depressed. (R. at 47.) She testified that she sometimes likes who she is, but not most of the time. (R. at 48.) Plaintiff testified that she sometimes wishes that she could just start all over again. (Id.) Plaintiff testified that she has been seeing Dr. Gregory Davis once a week in a group therapy setting, and seeing Dr. Clay every two or three months. (R. at 46.) Plaintiff testified that she thinks she is getting better, except for the times when she gets angry. (R. at 47.) She testified that she gets angry when her son writes her letters from prison saying she is not doing enough for him. (R. at 50.) Plaintiff testified that her son's letters sometimes upset her so much that she locks herself in her room for a couple of days

until she calms down. (Id.) She also testified that when she gets upset, she gets headaches. (Id.) Plaintiff testified that she has memory problems, and that these problems interfere with her ability to do housework. (R. at 55.) She testified that other people think she is mean, and she thinks "spells" cause her meanness. (R. at 48.) Plaintiff testified that she is currently taking Zoloft, Trazodone, and Risperdal, but that she occasionally forgets to take her medications. (R. at 81, 84.) Plaintiff testified that she sometimes hears voices calling her name. (R. at 84.) She testified that she used to have suicidal thoughts, but has not had any in the last year. (R. at 85.) Plaintiff testified that she thinks she has a bad attitude and does not want to start working until she gets better. (R. at 83.)

With respect to her daily activities, Plaintiff testified that she spends her time sitting around watching television. (R. at 63.) She testified that she does not like to read because she cannot comprehend what she is reading. (R. at 60.) She testified that her fourteen-year-old son spends all his time with his friends, so they do not do anything together. (R. at 57.) Plaintiff testified that she is not active in her son's school or any other organization. (Id.) She testified that her son cooks for her sometimes and helps around the house by doing the laundry

and the shopping. (R. at 61-63.) Plaintiff testified that she cooks and cleans only when she has the energy to do it. (R. at 60-61.) She testified that she occasionally tries to walk three or four blocks. (R. at 64.) Plaintiff testified that she runs into people she knows on these walks, but she does not stand around talking to them because they deal drugs. (Id.) She testified that she used to be friendly with the people she worked with, but now that she no longer has a job, she never sees her old co-workers. (R. at 51.) She testified that she does not have any female friends, except for an elderly woman who lives in her neighborhood. (R. at 52.) Plaintiff testified that she has some male friends who she has known since grammar school and high school. (R. at 53.) Plaintiff testified that she has a boyfriend who is married to another woman, and that they see each other about every two weeks. (R. at 55.)

### 2. Vocational Expert's Testimony

After Plaintiff testified, the ALJ heard from Michelle Peters, a vocational expert ("VE"). (R. at 85.) The ALJ asked VE Peters how she would characterize Plaintiff's past work. (R. at 86.) VE Peters testified that she considered Plaintiff's inspector and meter operator positions to be unskilled in nature and light in physical demand. (Id.) She testified that she considered the homemaker position to be low-end, semi-skilled in

nature and light in physical demand. (Id.) The ALJ then asked VE Peters whether an individual of Plaintiff's age, education, and vocational background, who has no exertional impairments, who is limited to performing simple one, two, or three step tasks, and who should avoid contact with the public and have only limited contact with co-workers and supervisors, was capable of performing her past work. (R. at 85-86.) VE Peters testified that such an individual could work as an inspector and meter operator. (R. at 86.) VE Peters further testified that these positions require work to be done in a timely manner, and that an individual working in these positions probably cannot be absent more than once a month. (R. at 88-89.)

### 3. Medical Evidence

In addition to the testimony given by Plaintiff and VE Peters, the ALJ considered medical records documenting Plaintiff's impairments.

#### a. Dr. Dizon—SSA Examining Physician

On July 18, 2000, Dr. Elouisa Dizon performed a psychiatric evaluation of Plaintiff for the SSA. (R. at 217.) Dr. Dizon diagnosed Plaintiff as suffering from major depressive disorder. (R. at 220.) In her report, she noted that Plaintiff had trouble sleeping, heard voices, and was argumentative. (R. at 217.) Dr. Dizon also noted that Plaintiff was fatigued and uninterested in

doing anything. (R. at 218.) Even though she diagnosed her as suffering from major depressive disorder, Dr. Dizon observed that Plaintiff did not appear depressed at the time of the examination. (R. at 220.) The Global Assessment of Functioning ("GAF") score that Dr. Dizon assigned to Plaintiff was a 65. (Id.)

### b. Dr. Davis—Plaintiff's Treating Psychologist

The record also contains notes and assessments from Plaintiff's treating psychologist, Dr. Davis. These notes document each appointment he had with Plaintiff. In all, the record contains treatment notes from 37 appointments, beginning on January 10, 2000, and ending on May 21, 2001. (R. at 283.) Dr. Davis' treatment notes indicate that Plaintiff continued to suffer from depression throughout her time in therapy. Many of the notes, like the ones from appointments on January 31, 2000, May 1, 2000, May 8, 2000, June 5, 2000, July 31, 2000, August 21, 2000, September 18, 2000, September 25, 2000, November 13, 2000, January 29, 2001, and February 5, 2001, report that Plaintiff's depression either continued or was stable. (R. at 231, 187, 185, 180, 241, 239, 234, 232, 236, 224, and 223.) Some of the treatment notes, like the ones from March 27, 2000, December 18, 2000, March 12, 2001, May 14, 2001, and May 21, 2001, reported improvement in Plaintiff's depression. (R. at 191, 225, 222,

263, and 264.) Other treatment notes from February 28, 2000,

April 10, 2000, April 24, 2000, May 15, 2000, May 22, 2000,

August 14, 2000, October 2, 2000, November 6, 2000, March 26,

2001, April 9, 2001, April 16, 2001, and April 23, 2001, showed

Plaintiff's depressive condition worsening. (R. at 194, 190,

188, 183, 182, 240, 231, 227, 268, 261, 266, and 265.)

Dr. Davis completed the Documentation of Medical Exemption

for Plaintiff on March 20, 2000, and diagnosed her with major

depressive disorder. (R. at 177.) In the Documentation of

Medical Exemption, he noted that Plaintiff remained depressed and

that her vegetative state and mood symptoms continued. (Id.)

Dr. Davis indicated that he believed Plaintiff's medical

condition currently prevented her from seeking employment, and

that she would be unable to return to work until her depression

was ameliorated. (R. at 178.) On August 28, 2000, Dr. Davis

wrote a letter to the Illinois Department of Public Aid, in which

he opined that Plaintiff was currently unable to maintain

employment or engage in any work-related programs. (R. at 235-

236.) He stated that Plaintiff suffered from major depressive

disorder, with psychotic features. (R. at 235.)

### c. Dr. Clay—Plaintiff's Treating Physician

The record contains notes from Plaintiff's treating

physician, Dr. Clay. These notes document the several occasions

Plaintiff saw Dr. Clay in connection with her general medical complaints. (R. at 179, 181, 186, 192, 195, 202, 225, 230, 233, 242, 247, 249, 251, and 256.) On March 8, 2000, an SSA representative contacted Dr. Clay. (R. at 160.) Dr. Clay reported that Plaintiff had been diagnosed with major depression and an abnormal mammogram. (Id.) Dr. Clay stated that Plaintiff could follow simple one and two-step instructions, but indicated that she would have trouble with detailed information. (Id.) Dr. Clay reported that Plaintiff's condition had improved, but her prognosis was unknown. (Id.)

### d. Dr. MacLean—SSA Non-Examining Physician

Finally, the record contains Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFCA") forms prepared by Dr. Donald MacLean on March 21, 2000, based on his review of the evidence in the file. (R. at 171.) On the PRT form, Dr. MacLean indicated that Plaintiff has an affective disorder that causes slight limitations in her daily activities and social functioning. (Id.) He also indicated that Plaintiff's affective disorder seldom causes any deficiencies of concentration, persistence, or pace, and never causes any episodes of deterioration or decompensation in work or work-like settings. (Id.) Further, Dr. MacLean indicated that Plaintiff could understand, remember, and carry out simple tasks and make

simple work-related decisions.  (R. at 175.)  However, Dr.
MacLean opined that Plaintiff is moderately limited in her
ability to understand, remember, and carry out detailed
instructions.  (R. at 173-174.)  He also noted that she is
moderately limited in her ability to respond appropriately to
changes in the work setting.  (Id.)  Dr. MacLean found no
significant limitations in any other areas of Plaintiff's mental
functioning.  (Id.)  He indicated that Plaintiff could get along
with others and cope with changes in simple work situations.  (R.
at 175.)  A second state agency physician affirmed Dr. MacLean's
assessments on March 21, 2000.  (R. at 164.)

### 4.  The ALJ's Opinion

On July 23, 2001, the ALJ issued his decision, finding that
Plaintiff was not disabled and denying her claim for benefits.
(R. at 26-27.)  The ALJ found that, although Plaintiff's
affective disorder is a severe impairment, the record does not
contain evidence that her condition meets or equals the Listings.
(R. at 25.)  Specifically, the ALJ found that Plaintiff displays
no worse than slight restrictions in her daily living activities
and social functioning, and moderate deficits in concentration,
persistence, and pace.  (Id.)  He also found that she has never
decompensated in work or in work-like settings.  (Id.)

The ALJ determined that Plaintiff's primary impairment was depression. (Id.) But, he did not agree with her treating psychologist's opinion that this impairment precluded Plaintiff from maintaining employment or engaging in work-related programs. (Id.) The ALJ gave the treating psychologist's opinion little weight because he believed it was overly broad and nonspecific. (Id.) Instead, he looked to the record, the opinions of other psychologists who had evaluated Plaintiff, and Plaintiff's testimony and demeanor at the hearing, in making his determination that she was capable of maintaining employment and engaging in work-related programs. (Id.) The ALJ recognized that Plaintiff does appear to have occasional auditory hallucinations. (Id.) He also recognized that there is some indication that Plaintiff has difficulty focusing on tasks. (Id.) Therefore, the ALJ limited her to simple one, two, or three step tasks, in an environment where she could avoid contact with the general public and have minimal contact with co-workers and supervisors. (Id.) Given these limitations, the ALJ concluded that Plaintiff is still capable of performing her past relevant work as an inspector in a cap and gown factory or as a postage meter operator. (R. at 27.)

## STANDARD OF REVIEW

In reviewing the ALJ's decision, the Court may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). This does not mean that the ALJ is entitled to unlimited judicial deference, however. The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d at 333. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level. *See Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review). The ALJ must

build "an accurate and logical bridge" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Finally, although Plaintiff bears the burden of demonstrating his disability, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (quoting *Smith v. Sec'y of HEW*, 587 F.2d 857, 860 (7th Cir. 1978)). "Failure to fulfill this obligation is 'good cause' to remand for gathering additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (finding that, if the ALJ found the evidence before him insufficient, he should have obtained more evidence).

## **SOCIAL SECURITY REGULATIONS**

Social Security Benefits are available only to claimants who can establish disability under the terms of the Social Security Act. A five-step sequential analysis is used to determine whether an individual is eligible for benefits. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2001). The ALJ is required to evaluate, in sequence, (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see*

*also Young*, 957 F.2d at 389. A finding of disability requires an affirmative answer at either step 3 or step 5. A negative answer at any step (other than step 3) precludes a finding of disability. *Id*. The claimant bears the burden of proof at steps 1-4, but the burden shifts to the Commissioner at step 5. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ's decision must be reversed or remanded, because: (1) the ALJ improperly rejected the treating psychologist Dr. Davis' opinion that Plaintiff met the Listings and that her overall ability to work was restricted; (2) the ALJ erred by focusing only on those portions of the treatment notes indicating that Plaintiff's condition was stable, while ignoring notes demonstrating ongoing symptoms of depression; (3) the ALJ reached his own medical conclusions and impermissibly played "doctor"; (4) the ALJ's hypothetical to the VE presupposed an ability to do simple one, two, or three step jobs, but did not include difficulty focusing on tasks; and (5) the ALJ did not provide reasons for discounting Plaintiff's credibility. The Court considers each argument in turn.

## A. ALJ Properly Discounted Treating Psychologist's Opinion

Plaintiff first argues that the ALJ erred in rejecting her treating psychologist Dr. Davis' opinion that she meets the Listings, and that Plaintiff is unable to work. She contends that the ALJ erred by relying upon Dr. Davis' opinion that she meets the "A" criteria of the Listings, but rejecting it as to

the degree of limitations her impairment causes.[1]  As Plaintiff

correctly points out, a treating physician's opinion regarding

the nature and severity of a medical condition is entitled to

controlling weight.  20 C.F.R. §§ 404.1527(d), 416.927(d).  But,

the opinion has to be well-supported by medical findings and

cannot be inconsistent with other substantial evidence.  *Id.*  A

claimant is not entitled to disability benefits simply because a

physician finds that the claimant is "disabled" or "unable to

work."  Under the Social Security Regulations, the Commissioner

is ultimately the one charged with making this determination. 20

C.F.R. § 404.1527(e).

In his decision, the ALJ noted that Dr. Davis did not

adequately explain the specific psychiatric symptoms which render

Plaintiff unable to sustain any kind of competitive employment.

(R. at 25.)  The ALJ went on to say in his decision that Dr.

Davis did not discuss the frequency with which Plaintiff's

symptoms occur, or specifically indicate which psychiatric

manifestations prevent her from performing those mental work-

related activities required of even simple, unskilled work.

(Id.)  Because he considered Dr. Davis' opinion broad and

nonspecific, the ALJ gave his assessment little weight.  (Id.)

---

[1] Specifically, Plaintiff claims that the ALJ erred in concluding that
Plaintiff did not have marked restriction of activities of daily living,
marked difficulties in maintaining social functioning, marked difficulties in
maintaining concentration, persistence, or pace, or repeated episodes of
decompensation, each of extended duration.

Instead, he looked to the record, the opinions of other psychologists who had evaluated Plaintiff, and Plaintiff's testimony and demeanor at the hearing. (Id.) Not only did Plaintiff appear personable and well groomed at her hearing, she also managed to adequately present herself for her evaluation with Dr. Dizon. (Id.) The ALJ noted that, during her testimony, Plaintiff indicated an optimistic outlook by stating that she is finishing her GED and wants to go back to work. (Id.) The ALJ also noted that in September 2000, Plaintiff reported assisting a friend with errands and cooking, after her friend had recently been discharged from the hospital. (Id.) He concluded that her ability to assist another individual indicated that Plaintiff has the capacity to interact with others and engage in meaningful daily activities. (Id.) This, along with the evaluations of Dr. Dizon and Dr. MacLean, convinced the ALJ that Plaintiff does not meet the Listings and is capable of working. (Id.)

The ALJ fulfilled his obligation by identifying the evidence which supported his conclusion and by explaining why he rejected evidence supporting Plaintiff's claim of disability. He noted in his opinion how the record, the opinions of other psychologists who had evaluated Plaintiff, and Plaintiff's testimony and demeanor at the hearing, supported his conclusion that her impairment did not meet the "B" criteria of the Listings. (Id.)

The ALJ also explained why he rejected Dr. Davis' opinion. He noted that Dr. Davis' opinion did not discuss the frequency with which Plaintiff's symptoms occur, or specifically indicate which psychiatric manifestations prevent her from performing those mental work-related activities required of even simple, unskilled work. (Id.) Because the ALJ fulfilled his obligations, this Court finds that the ALJ properly discounted Dr. Davis' opinion.

## B. The ALJ Did Not Ignore Treatment Notes Demonstrating Plaintiff's Ongoing Symptoms Of Depression

Next, Plaintiff argues that the ALJ erred by focusing only on those portions of the treatment notes indicating that Plaintiff's condition was stable, to the exclusion of others demonstrating ongoing symptoms of depression. In particular, she mentions Dr. Davis' treatment notes from March 19, 2001, through May 21, 2001, that were submitted to the ALJ, but never discussed in his decision.

The ALJ does, in fact, mention Dr. Davis' 2001 treatment notes. Specifically, the ALJ mentioned Dr. Davis' August 28, 2000, letter to the Illinois Department of Public Aid, in which he opined that Plaintiff was currently unable to maintain employment or engage in any work-related programs. (R. at 25.) The ALJ then stated that Dr. Davis' letter pre-dated his later treatment notes – including the treatment notes from March, April and May of 2001-- which indicated that Plaintiff's depression

was stable. (Id.) Plaintiff insists that this is error, because although some of Dr. Davis' post-August 28, 2000 notes indicate that her condition was improving, others note that Plaintiff's depressive condition was deteriorating.

Seventh Circuit caselaw makes clear that an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion" *Herron*, 19 F.3d at 333. However, the ALJ is not required to discuss every piece of evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171,1176 (7th Cir. 2001). Rather, an ALJ must consider the evidence in its entirety.( *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000); *see also, Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003) (an ALJ's opinion must demonstrate that he has reviewed all of the evidence to permit appellate review, but the ALJ is not required to discuss each item of evidence.)

After reviewing the treatment notes, the Court concludes that the ALJ did not selectively discuss only the evidence favoring his decision. The ALJ expressly mentions the post-August 28, 2000 treatment notes in his decision, and concludes that the notes indicate that Plaintiff's depression was stable. Specifically, the ALJ notes that although Plaintiff's depressive symptoms were increasing in October 2000, by January 2001, Plaintiff was described as "stable." (R. at 24.)

Plaintiff's real disagreement is with the ALJ's conclusion that Dr. Davis' post August 28, 2000 treatment notes indicate that her depression was stable.

The Court acknowledges that some of the post-August 28, 2000 treatment notes indicate a worsening of Plaintiff's condition[2]. Others, however, indicate that Plaintiff's condition was "stable" (R. at 252,) or improving, (see, e.g., R. at 251; Treatment notes from Dec.18, 2000, noting that Plaintiff's depression, mood swings, and anger were decreasing, and her activity was increasing.) However, this is perfectly consistent with the ALJ's findings and do not support Plaintiff' claim that the ALJ ignored treatment notes supporting her claims of depression. Significantly, Plaintiff's treatment notes from May 14, 2001 and May 21, 2001 – the most recent treatment notes in the Record – note that Plaintiff "appears to be experiencing [decreasing] depression." R. at 263, 264. Given this "trend," the Court cannot find that the ALJ erred in concluding that Plaintiff's condition was stable, or that the ALJ ignored certain treatment notes in coming to that conclusion. Therefore, the Court

---

[2] On October 2, 2000, for example, Dr. Davis noted that Plaintiff's depressive condition appeared to be worsening. (R. at 231.) She was very quiet for much of her group meeting, and when asked how she was doing, she responded that she was having problems with her brother. (Id.) During another group therapy session on April 23, 2001, Dr. Davis noted that Plaintiff was very quiet at her group meeting and was noticeably uncomfortable with a discussion on sexual orientation. (R. at 265.) These notes hardly dictate the conclusion that Plaintiff's depression was disabling, however.

concludes that the ALJ fulfilled his obligations and rejects
Plaintiff's claim of error.

## C. The ALJ Did Not Reach His Own Medical Conclusions

Plaintiff's third argument is that the ALJ reached his own
medical conclusions in this case. The ALJ's responsibility is to
weigh the evidence and to make a determination on whether the
claimant is entitled to benefits. When it comes to mental
illnesses, health professionals, and not judges, are the experts.
*Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). An ALJ
cannot simply offer his own lay view of depression for that of a
"doctor." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).
However, the Social Security Regulations make clear that the
ultimate finding of disability is reserved for the Commissioner,
and not a claimant's treating physician. 20 C.F.R. 404.1503 and
416.903.

After weighing the evidence, the ALJ determined that
Plaintiff's impairment did not meet or medically equal one of the
listed impairments. (R. at 25.) It is clear to the Court that,
in making his determination, the ALJ carefully reviewed all of
the relevant medical evidence. The ALJ noted Dr. Davis'
conclusion that Plaintiff is unable to engage in work-related
programs, but took issue with Dr. Davis' failure to explain the
specific psychiatric symptoms causing such a disability. The ALJ
further found that Dr. Davis did not discuss the frequency with

which Plaintiff's symptoms occur, or indicate which manifestations render Plaintiff unable to perform even simple, unskilled work. R. at 25.

The ALJ noted that Dr. Davis' opinion that Plaintiff was disabled predated his treatment notes indicating that Plaintiff's depression was stable. R. at 25. Moreover, the ALJ observed that Plaintiff appeared personable and well-groomed at the hearing. Plaintiff's ability to care for herself, as well as her ability to assist an ailing friend with errands and cooking, and her desire to finish her GED further informed the ALJ's conclusion that Plaintiff's depressive condition did not render her disabled.

Contrary to Plaintiff's claim, the ALJ did cite to relevant medical evidence in support of his conclusion that Plaintiff's depression did not render her disabled. The ALJ specifically noted that his finding was supported by the conclusions of the State Agency psychologist. R. at 25 (*citing* R. at 164 -176.) The psychologist acknowledged Plaintiff's history of depression, but found that Plaintiff could nevertheless understand, remember, carryout simple tasks, and make simple work-related decisions.

Under these circumstances the Court cannot conclude that the ALJ improperly substituted his opinion for that of Dr. Davis. To the contrary, the ALJ considered and weighed Dr. Davis' opinion against other evidence in the Record in concluding that, although

Plaintiff was depressed, she was not disabled. The ALJ properly
discussed the evidence supporting his conclusion, and cited to
supporting medical evidence. Because the ALJ did not substitute
his opinion for that of Dr. Davis, this Court rejects Plaintiff's
claim that the ALJ impermissibly reached his own medical
conclusions in Plaintiff's case.

**D.  The ALJ's Hypothetical To The VE Did Incorporate Plaintiff's
Difficulty In Focusing On Tasks**

Next, Plaintiff argues that the ALJ's hypothetical to the VE
presupposed an ability to do simple one, two, or three step jobs,
but did not incorporate Plaintiff's difficulty in focusing on
tasks. Because the hypothetical posed to the VE was incomplete,
Plaintiff argues, it was error for the ALJ to have relied on the
VE's opinion to find that she could perform her past work.

In his decision, the ALJ recognized that Plaintiff has
occasional auditory hallucinations and some difficulty focusing
on tasks. (R. at 25.) Because of these conditions, he limited
her to simple one, two, or three step tasks in an environment
where she would avoid contact with the general public and have
minimal contact with co-workers and supervisors. (Id.) So, the
ALJ's decision indicates that he did, in fact, consider
Plaintiff's difficulty in focusing on tasks when formulating the
hypothetical he posed to the VE. Specifically, the ALJ limited
Plaintiff to simple one, two, or three step tasks because of her

occasional auditory hallucinations and her difficulty focusing on tasks. Therefore, it was not error for the ALJ to have relied on the VE's opinion to find that Plaintiff could perform her past work.

**E. The ALJ Sufficiently Explained Why He Discounted Plaintiff's Credibility**

Finally, Plaintiff argues that the ALJ did not sufficiently explain why he discounted her credibility. Specifically, Plaintiff claims that the ALJ did not explain why he found her testimony only partially credible. For example, Plaintiff questions why the ALJ accepted her testimony that she hears voices, but rejected her description of her daily activities. The ALJ is bound to consider certain factors in making a credibility determination, and must explicitly state why he does not believe the claimant. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (while an ALJ's credibility determinations are generally entitled to substantial deference, that is true only when the ALJ explicitly makes such findings and explains them in a way that affords meaningful review).

In this case, the ALJ did explain why he rejected Plaintiff's testimony concerning her daily activities. The ALJ noted that Plaintiff showed up to both her hearing and her consultative evaluation well groomed, despite the fact that she claimed to have a problem with grooming. (R. at 25.) As such,

the ALJ satisfied his obligations under Social Security Ruling

("SSR") 96-79, which requires the ALJ to give "specific reasons"

for a credibility finding. Therefore, the Court rejects

Plaintiff's contention that the ALJ improperly rejected some of

her testimony as incredible.

### CONCLUSION

The Social Security Regulations and the Seventh Circuit cases

interpreting those Regulations impose many burdens upon the ALJ;

but primarily require the ALJ to carefully weigh all of the

evidence and to resist the temptation to substitute his own

judgment for that of medical professions. Plaintiff's counsel

does an excellent job of parsing through the record in an attempt

to demonstrate that the ALJ failed to satisfy his obligations to

Plaintiff. But the Court's review of the ALJ's decision and the

Record indicates that the ALJ carefully weighed all of the

evidence in the record, and incorporated his own impressions of

Plaintiff's testimony and demeanor at the hearing. There is no

indication that the ALJ was unfair, or ignored evidence favorable

to Plaintiff's claim of disability. To the contrary, the Court

finds that the ALJ's decision was a thoughtful one, and was

consistent with his obligations under applicable law.

In conclusion, the ALJ built an accurate and logical bridge

between the record evidence and his ultimate conclusion that

Plaintiff is capable of performing her past relevant work as an

inspector in a cap and gown factory or as a postage meter

operator. The ALJ's finding is supported by substantial evidence. Accordingly, the Court must deny Plaintiff's Motion for Summary Judgment and grant the Commissioner's Motion for Summary Judgment.

Dated: August 9, 2004          E N T E R:

_____

ARLANDER KEYS
United States Magistrate Judge